IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN MICHAEL ASSOCIATES, INC.,

      Plaintiff,

      v.

BLUESTEM MANAGEMENT ADVISORS LLC, et al.,

      Defendants.

Case No. 2:22-cv-2055-HLT

**MEMORANDUM AND ORDER**

This case is about an agreement to purchase and supply nitrile gloves during the COVID-19 pandemic. Plaintiff John Michael Associates, Inc. brings this breach-of-contract action against Defendants BlueStem Management Advisors LLC ("BlueStem Management"), BlueStem Health Care LLC ("BlueStem Health"), and Thomas D. Johnson. Plaintiff claims it paid Defendants over one million dollars to procure gloves for Plaintiff to provide to its healthcare clients. Defendants delayed and failed to deliver.[1] Plaintiff claims Defendants breached contracts, were unjustly enriched, and committed fraud and made negligent misrepresentations.

Defendants move for summary judgment. Doc. 52. Fundamentally, the parties disagree about the terms of their agreement. Defendants argue that delivery dates were not guaranteed, no cancellations or returns were allowed, and Defendants in good faith gave Plaintiff other reasonable options for purchase but Plaintiff rejected their attempts to cover. Plaintiff maintains the parties agreed to a specific schedule for deliveries of a particular brand of gloves and that Defendants'

---

[1] This is the third such case in this district against Defendants for failure to deliver nitrile gloves during the pandemic. *See, e.g.*, *Les Indus. Wipeco, Inc. v. Bluestem Mgmt. Advisors, LLC*, 2023 WL 4295364 (D. Kan. 2023); *BD Med. Supplies LLC v. Bluestem Mgmt. Advisors, LLC*, 2023 WL 4930147 (D. Kan. 2023).

replacement options were unreasonable. Defendants also argue the unjust enrichment claim is duplicative and the fraud and negligent misrepresentation claims fail on their elements.

The Court disagrees with Defendants on most issues. Defendants have not met their burden to show an entitlement to summary judgment on Plaintiff's breach of contract claim. There are issues of fact about the terms of the agreement, what constituted reasonable alternatives, and who was bound by the agreement. And Plaintiff's claims for unjust enrichment, fraud, and negligent misrepresentation may proceed against Johnson and BlueStem Health. But the Court grants summary judgment on those claims against BlueStem Management because it is undisputed that BlueStem Management is a party to the agreement, and Plaintiff may not convert a breach-of-contract claim into a tort.

## I.     BACKGROUND[2]

Plaintiff sought to source nitrile gloves for its healthcare clients in December 2020. Thomas Johnson[3] made several representations to Plaintiff or Plaintiff's principal Paul Sposito before Plaintiff decided to buy from Defendants. Johnson represented:

- Defendants had experience supplying gloves during the COVID-19 pandemic;
- Defendants had created a supply chain capable of supplying gloves in a pandemic environment;
- Defendants' supply chain could withstand COVID-19 challenges;
- Defendants would deliver SkyMed gloves in six weeks; and
- Defendants had employees in Thailand (where the gloves would be manufactured).

---

[2] For purposes of summary judgment, the following facts are uncontroverted or recited in the light most favorable to the nonmoving party.

[3] Johnson is the sole member of both BlueStem Management and BlueStem Health.

Plaintiff agreed to buy gloves from Defendants on a December 10, 2020 phone call. But, ultimately, some of Johnson's representations proved untrue. Defendants were unable to supply gloves during the pandemic within six weeks. Johnson testified in deposition that delays in glove delivery could be six to nine months under pandemic conditions. And Defendants did not have employees in Thailand; Defendants' contacts were contractors instead.

Plaintiff sent Purchase Orders to Defendants for SkyMed gloves on December 14 and 22, 2020. Plaintiff made deposits of $770,000 and $385,000 respectively. Both Purchase Orders provided "first order available in 30-45 days, thereafter monthly arrivals every 30 days; estimated 6 weeks." Docs. 53-6, 53-7. Defendants accepted both deposits. Johnson testified that 95% or 99% of the deposits were transferred to SkyMed. But Defendants' former attorney told Plaintiff in August 2021 that Defendants only sent SkyMed 30% of the deposits.

Plaintiff received documents titled "Glove Terms Agreement" and "Terms Agreement" before and after Plaintiff submitted the Purchase Orders. The first one (Glove Terms Agreement) came from Marc Siegel on December 1, 2020. Siegel is an independent broker affiliated with G&G Garments Ltd. and Vendral Corp. Sposito testified that it "was fair" to say that Siegel was "presenting to [him] an opportunity to purchase nitrile gloves through [Defendants], and laying out some potential terms that would govern the transaction." Doc. 53-3 at 4. The second (Terms Agreement) came from Johnson on January 20, 2021 and was dated August 25, 2020. Doc. 53-4 at 22. Both terms sheets stated that no returns or cancellations were allowed and that market conditions supersede requested shipping dates. The first terms sheet also said, "Due to extreme volatility of PPE products, FORCE MAJEURE may apply." Doc. 53-2 at 1. Defendants contend one or both terms sheets formed part of the parties' agreement.

Johnson first mentioned the term "force majeure" in an email communication to Plaintiff on January 15, 2021. He said he could not provide an exact delivery date "especially with force majeure kicking in, with a global pandemic." Doc. 59-2 at 7. He first mentioned "force majeure" in connection with glove industry production on January 28. And he first mentioned "force majeure" in connection with SkyMed production on February 17.

Johnson and Plaintiff exchanged several emails between January 2021 and May 2021. Highly summarized, Johnson repeatedly modified the schedule and the composition (sizes and number) of boxes that would be delivered. Johnson also told Plaintiff about multiple other options for purchasing gloves from other entities. But the prices were higher, Plaintiffs would have had to pay an additional deposit, and not all the gloves were not certified as meeting FDA 510(k) standards, which Plaintiff required. The content of the emails eventually turned to demands and expectations for a refund.

Sposito wrote to Johnson on April 19 to accept gloves from another supplier, BestSafe, in place of SkyMed gloves for one client. Plaintiff paid Defendants a total of $220,500 in "new money" (not transferred from the money Plaintiff paid for SkyMed gloves). The stated purchase price for the BestSafe gloves was $315,000. It is unclear whether more was owed or whether Defendants discounted or wrote off the remainder.

Plaintiff told Johnson on June 15 that Plaintiff wanted to cancel the SkyMed orders. Johnson gave various assurances that SkyMed would refund the money paid. Johnson believed by early January (before most of the email communications) that SkyMed's production problems were "more than likely to be due to fraud less than force majeure or true reality of their ability to produce." Doc. 59-3 at 6. But no one affiliated with Defendants communicated this belief to Plaintiff.

Plaintiff did not pursue its own investigation of SkyMed or any remedies because Johnson said he was pursuing refunds and didn't share his concerns of fraud at SkyMed. But Johnson reported SkyMed's activities to investigative agencies. And SkyMed's CEO was arrested by Thai authorities in November 2021 on fraud charges. Plaintiff has never received the SkyMed gloves or a refund for the deposits made for SkyMed gloves.

## II.  STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts applying this standard view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

## III.  ANALYSIS

### A.  Breach of Contract

Defendants focus much of their argument on the breach of contract claim. A plaintiff must establish the following elements for a breach of contract case in Kansas: (1) a contract between the parties; (2) sufficient consideration supporting the contract; (3) the plaintiff's performance or willingness to perform as the contract requires; (4) a breach by the defendant; and (5) breach-caused damages. *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013) (citations omitted).

Defendants thus need to show a lack of evidence on an element to get summary judgment or establish an affirmative defense.[4]

**Terms of the Agreement.** The principal dispute is the terms of the agreement between the parties. The parties agree they entered contracts but do not agree on the terms. Plaintiffs contend the agreement is limited to the two Purchase Orders. Defendants argue that the two Purchase Orders do not reflect the parties' entire agreement. They contend that the Glove Terms Agreement and/or the Terms Agreement must supplement the parties' intended terms because the Purchase Orders are silent on certain terms. *See* Doc. 53 at 19.

Defendants make two specific arguments based on their broad view of the contracts in their summary-judgment motion. Defendants first argue that the Purchase Orders didn't provide for guaranteed delivery dates. Both Purchase Orders state that the boxes of gloves would be shipped in increments, with the first ones being available in 30-45 days with monthly arrivals thereafter every 30 days. They also say "estimated six weeks." Defendants argue this language is incomplete, so the Purchase Orders can be supplemented by evidence of consistent additional terms. Second, Defendants argue that the parties' agreement provided for no returns or cancellations.

Defendants are correct that there are circumstances when additional terms may be considered for a contract that does not contain all agreed-upon terms. Such circumstances include when a contract is unintegrated or partially integrated or ambiguous. *See* K.S.A. § 84-2-202 (providing terms may be supplemented by evidence of consistent additional terms <u>unless</u> the court

---

[4] Defendants do not meaningfully challenge whether all three defendants could be liable under the contracts and instead raise this issue in a footnote. Defendants note that BlueStem Management was the contracting party and that neither Johnson nor BlueStem Health were parties to the contracts. *See* Doc. 53 at 35 n.3; *see also* Docs. 53-6, 53-7. They did not seek summary judgment on this issue, and the Court notes that Plaintiff alleges in the pretrial order that "Johnson and BlueStem Health are also liable because the BlueStem Management corporate form is a fiction, controlled by Johnson and used interchangeably with BlueStem Health." Doc. 51 at 18. The Court will not grant summary judgment for Johnson or BlueStem Health based on Defendants' cursory footnote. The Court therefore refers to Defendants in the plural for this analysis.

finds "the writing to have been intended also as a complete and exclusive statement of the terms of the agreement"); § 84-2-202 comment (stating the statute rejects "[a]ny assumption that because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon"); *Aero Consulting Corp. v. Cessna Aircraft Co.*, 867 F. Supp. 1480, 1490 (D. Kan. 1994); *Barbara Oil Co. v. Kan. Gas & Elec. Co.*, 827 P.2d 24, 34-35 (Kan. 1992) (discussing when a court may consider parol evidence). But Defendants have not shown as a matter of law or fact that resort to additional terms is appropriate here. The parties agree that the Purchase Orders are an agreement. They dispute whether the terms sheets are also part of this agreement. Defendants' evidence for inclusion of the term sheets is unauthenticated, unsigned, and lacks any foundational support in the summary-judgment record. And Defendants have not discussed the associated legal issues in any depth. The Court declines to make any decisions about integration or ambiguity on the record before it and in the absence of more robust argument. Simply stated, the Court cannot ascertain the terms of the contract between the parties on the instant record. Defendants have not shown an entitlement to summary judgment based on either the delivery-date argument or the no-refund-no-cancellation argument.

Defendants make a backup argument on the delivery-date argument that warrants consideration. Defendants alternatively argue they were excused from timely delivery regardless of the terms of the agreement because performance was commercially impracticable. *See* K.S.A. § 84-2-615. They claim that intervening circumstances outside of their control excuse their alleged non-performance.

K.S.A. § 84-2-615 provides:

> Delay in delivery or nondelivery in whole or in part by a seller . . . is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a

7

>contingency the nonoccurrence of which was a basic assumption on which the contract was made[.]

The impracticability defense requires the seller to notify the buyer "seasonably" that there will be delay or non-delivery. K.S.A. § 84-2-615(c). Impracticable performance may relieve a promisor from breach-of-contract liability. *Sunflower Elec. Coop., Inc. v. Tomlinson Oil Co.*, 638 P.2d 963, 969 (Kan. Ct. App. 1981). But only <u>objective</u> impracticability relieves a party of a contractual obligation in Kansas. Subjective impracticability does not. Stated differently, "The thing cannot be done" suffices, but "I cannot do it" does not. *Id.* at 970. There are also three exceptions to the impracticability defense in Kansas: (1) where the promisor caused the impracticability; (2) where the promisor had reason to expect the impracticability; and (3) where the language or circumstances indicate the promisor should not be relieved, such as if he agreed to assume the risk. *Id.*

There are factual issues precluding summary judgment on the impracticability defense. A jury must decide whether Defendants' notice was seasonable. A jury must decide whether any impracticability was objective or subjective. And there are questions of fact about whether any of the three exceptions apply. Summary judgment is not appropriate on this alternative argument.

**Other Arguments.** Apart from disputing the terms of the agreement, Defendants make two additional arguments for summary judgment. Defendants contend they did not breach the contract because they attempted to provide cover goods,[5] but Plaintiff rejected them and failed to perform: "[Plaintiff] has failed to pay in full for the gloves it ordered, rejected the substitute it was obligated to accept under K.S.A. § 84-2-614, and then purported to cancel an order that was explicitly non-cancellable." Doc. 53 at 22.

---

[5] Plaintiff alleges in the pretrial order that Defendants breached the contract by failing to provide cover goods, but Plaintiff does not further explain this claim.

Defendants sent Plaintiff multiple alternative options for sourcing. Plaintiff rejected all of them but BestSafe. But there is an issue of fact whether the options presented satisfied Defendants' contractual obligations. Summary judgment is not warranted because there is a question whether additional money ever became due, whether the substitutes satisfied Defendants' obligations, and whether the order was non-cancellable.

Defendants' final argument for summary judgment on the breach of contract is that they did not breach the duty of good faith and fair dealing. Defendants again fail to demonstrate they are entitled to summary judgment. Defendants argue that Plaintiff must point to a contract term that Defendants violated by withholding material information. Defendants maintain that they were in consistent communication with Plaintiff about the status of Plaintiff's orders and went to great lengths to source substitute goods. But once again, Plaintiff has proffered evidence that suggests Defendants failed to disclose to Plaintiff in a timely fashion that the contracts would not be fulfilled. There is evidence suggesting that Johnson thought by early January that there was a problem with SkyMed. Failure to timely disclose this problem to Plaintiff could constitute a breach of the covenant of good faith and fair dealing. Summary judgment is not warranted.

### B.     Unjust Enrichment

Defendants argue that Plaintiff's unjust enrichment claim fails because it is duplicative of Plaintiff's breach of contract claim and the parties agree that contracts exist. Defendants also argue that Plaintiff can't show they retained any benefit.

Under Kansas law, a plaintiff asserting an unjust enrichment claim must show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment

9

of its value." *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 847 (Kan. 1996) (internal quotations omitted). Unjust enrichment falls under the category of quantum meruit and restitution, and these "are not available theories of recovery when a valid, written contract addressing the issue exists." *Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1170 (D. Kan. 2006) (citation omitted). Unjust enrichment allows a party to recover the value of a benefit to another party who retains the benefit. *JA-DEL, Inc. v. Winkler*, 2019 WL 166936, at *2 (Kan. Ct. App. 2019). It may be available as a remedy in the case of a void, rescinded, waived, or unenforceable contract. *Ice Corp.*, 444 F. Supp. 2d at 1111 (citation omitted).

It is premature to dismiss the unjust enrichment claim as duplicative against Johnson and BlueStem Health. The terms of the contracts and who is bound are undecided. And there is evidence suggesting Defendants retained from 1% to 70% of the deposits from Plaintiff. Plaintiff may proceed with alternative claims against the two defendants who may not be parties to the contracts (Johnson and BlueStem Health).

BlueStem Management is another matter. Defendants concede BlueStem Management is a party to the contracts. And neither party challenges whether valid, written contracts exist. Plaintiff essentially (but not overtly) argues that Defendants should be estopped from challenging an unjust enrichment claim because Defendants argue that the Purchase Orders don't address the issue at hand: shipping deadlines and the availability of refunds. Plaintiff thus argues that Defendants do not agree there is a valid written contract <u>addressing the issue</u>.

Plaintiff's argument is unavailing. Neither party has argued the contracts are void, rescinded, waived, or unenforceable. Their disagreement is with the terms. Defendants maintain that either one or both terms sheets address the issue and form part of the contracts. The existence

10

of contracts governing the parties' relationship therefore precludes the claim of unjust enrichment as to BlueStem Management. Summary judgment is granted on this claim.

## C. Fraud and Negligent Misrepresentation

Plaintiff's allegations of fraud and negligent misrepresentation are based on the same facts and are alternative theories. Defendants argue Plaintiff cannot establish the elements of fraudulent inducement. Defendants argue none of their pre-contract statements were false. And Defendants contend their statements were mere puffery or promises of a future event. As for the allegations of fraud occurring after Plaintiff made the downpayments, Defendants argue they are entitled to summary judgment on the post-contract claims because Plaintiff fails to allege an additional injury.

A claim of fraudulent inducement requires "(1) defendant made an untrue statement of existing material fact, (2) defendant knew that the statement was untrue or recklessly made it with disregard for the truth, (3) defendant made the statement with the intent to induce plaintiffs to act on the statement, (4) plaintiffs justifiably relied on the statement to their detriment and (5) plaintiffs sustained injury as a result of their reliance." *BHC Dev., L.C. v. Bally Gaming, Inc.*, 985 F. Supp. 2d 1276, 1289 (D. Kan. 2013) (citing *Stechschulte v. Jennings*, 298 P.3d 1083 (Kan. 2013)); Pattern Inst. Kan. – Civ. 4th 127.40. The existence of fraud is ordinarily an issue of fact. *Alires v. McGhee*, 85 P.3d 1191, 1195 (Kan. 2004).

Negligent misrepresentation only requires that the defendant failed to take reasonable care in obtaining and making a true statement. *Stechschulte*, 298 P.3d at 1098 (citation omitted); Pattern Inst. Kan. – Civ. 4th 127.43. It is a claim that "addresses negligence of knowledge of material facts and the transmittal of already known material facts." *Id.* (citation omitted).

11

Defendants claim the statements that they had on-the-ground employees in Thailand and had personal relationships with SkyMed were not false. But Plaintiff has proffered evidence that they were. This is an issue of fact for the jury.

Defendants claim that the following statements were puffery:

- "On December 10, 2020, Johnson told JMA that BlueStem was the largest direct global supplier of personal protective equipment products and had experience in disruptive and dynamic consumer packaged goods environments like the COVID pandemic environment for PPE, but in fact never supplied a single SkyMed glove";

- "On December 10, 2020, Johnson told JMA that the supply chain he had created with BlueStem could withstand the challenges of the COVID pandemic environment"; and

- "On December 10, 2020, Johnson told JMA that BlueStem can deliver SkyMed gloves in six weeks notwithstanding pandemic conditions."

Doc. 53 at 28-29. According to Defendants, these statements are only Defendants' optimistic opinions about their ability to fulfill future orders. "Puffing of wares, sales propaganda, and other expressions of opinion are common, are permitted, and should be expected;" buyers should be capable of recognizing and discounting puffery when deciding whether to purchase. *VNA Plus, Inc. v. Apria Healthcare Grp., Inc.*, 29 F. Supp. 2d 1253, 1265-66 (D. Kan. 1998). But a statement isn't puffery if a reasonable person would attach importance to it in deciding about the transaction. *Timi v. Prescott State Bank*, 553 P.2d 315, 325 (Kan. 1976). A jury must decide if Defendants' statements were mere puffery. There is an issue of fact whether Defendants' statements were the type of statements that a reasonable person would consider important when deciding whether to put faith in a company to timely deliver products during a pandemic.

And Defendants claim some of their communications were promises of a future event, which are not actionable as fraud. "[T]he alleged misrepresentations must relate to some present or pre-existing fact and cannot ordinarily be predicated on unfulfilled promises or statements as to

future events." *VinStickers, LLC v. Millernet Corp.*, 2008 WL 360578, at *3 (D. Kan. 2008) (citing *Edwards v. Phillips Petroleum Co.*, 360 P.2d 23, 26 (Kan. 1961)). Plaintiff presents evidence suggesting that Johnson knew when he said he could deliver in six weeks that it would actually take six to nine months. Plaintiff thus argues that Johnson had no present intent to perform. *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 596 P.2d 816, 824 (Kan. 1979). This, too, is an issue for a jury.

Finally, Defendants claim the post-contract fraud and misrepresentation claims must fail because Plaintiff alleges no additional injury. Plaintiff does not answer this argument. These are the statements at issue:

- "Beginning on December 28, 2020, and continuing on January 6, January 15, January 25, January 26, February 4, February 8, February 17, and February 22, 2021 and beyond, Johnson and "BlueStem" gave JMA false or deliberately misleading information about production, shipment, and delivery dates for SkyMed gloves";

- "On December 30, 2020, Johnson told JMA that shipping was shut down from Thailand";

- "On January 26, 2021, Johnson forwarded a letter from a SkyMed executive claiming a lock down in Thailand as the reason for the lack of gloves at a time when Johnson knew that the SkyMed executive had committed fraud and had stolen deposit funds to secure the production of gloves"; and

- "Beginning on March 31, 2021, and continuing on April 27, May 12, May 20, May 21, and on a weekly basis throughout the remainder of May and June 2021, Johnson gave JMA false or deliberately misleading information about the availability of and efforts to secure a refund from SkyMed of JMA's deposit monies."

Doc. 53 at 32-33.

These allegations seem indistinguishable from Plaintiff's breach of contract claim. And Kansas law requires a different basis for a fraud claim than that for a breach-of-contract claim. *Wade v. Emcasco Ins. Co.*, 483 F.3d 657, 675 (10th Cir. 2007). The damages for fraud must be greater than those for breach of contract alone. *Id.*

The post-contract fraud and misrepresentation allegations are merely that Defendants failed to tell the truth when they made promises of deliveries and refunds. In other words, they are allegations of untrue assertions that the contract would be performed or refunded. And Plaintiff seeks the same damages for fraud/misrepresentation as for breach of contract. *See* Doc. 51 at 22. But again, there is a question of which Defendants may be bound by the contracts. The Court grants summary judgment on the post-contract representations to BlueStem Management. *See Les Indus. Wipeco, Inc.*, 2023 WL 4295364, at *14-15. But the Court declines to grant summary judgment on these claims against Johnson and BlueStem Health without resolving who are parties to the contracts.

### IV.     CONCLUSION

Defendants fail to show summary judgment is warranted on any matters other than the unjust enrichment and fraud/negligent misrepresentation claims against BlueStem Management. The Court denies Defendants' motion on all other grounds.

THE COURT THEREFORE ORDERS that Defendants' motion for summary judgment (Doc. 52) is denied in part and granted in part. The claims remaining for trial are breach of contract and fraud/negligent misrepresentation in the inducement against all defendants, and unjust enrichment and post-contract fraud/negligent misrepresentation against BlueStem Health and Johnson.

IT IS SO ORDERED.

Dated: August 22, 2023            /s/ *Holly L. Teeter*
                                  HOLLY L. TEETER
                                  UNITED STATES DISTRICT JUDGE